641 S.E.2d 400 (2007)
In the Matter of A.S. and S.S., Minor Children.
No. COA06-1354.
Court of Appeals of North Carolina.
March 6, 2007.
Lauren Vaughan, Hickory, for Petitioner-Appellee Iredell County Department of Social Services.
Massey, Cannon & Griffin, P.L.L.C., by Jonathan D. Griffin, Statesville, for Respondent-Appellee Father.
Michael E. Casterline, Asheville, for Respondent-Appellant Mother.
Holly M. Groce, Clemmons, Attorney Advocate for Guardian ad Litem.
McGEE, Judge.
A.S-M. (Respondent-Mother) and R.S. (Respondent-Father) are the biological parents of A.S. and S.S. (the children). Respondent-Mother and Respondent-Father were married, but separated on 1 December 2003. They entered into a consent order on 1 June 2004 in a civil action, Iredell County District Court file 04 CVD 120, involving issues of child custody, child support and equitable distribution. Pursuant to the consent order, the parents were granted joint custody of the children, with Respondent-Mother "exercising the primary care, custody and control" of the children. The parents were subsequently divorced.
The Iredell County Department of Social Services (DSS) began investigating whether the children were neglected after receiving three child protective service reports on 25 April 2005. Respondent-Mother allowed the children to live with Respondent-Father beginning in May 2005. DSS filed juvenile petitions on 9 June 2005 alleging that the children were neglected juveniles. The trial court appointed a Guardian ad Litem (GAL) and attorney advocate to represent the children on 26 July 2005.
The trial court entered an amended adjudication order on 11 January 2006. The trial court found that Respondent-Mother began dating B.M. (Respondent-Stepfather) and that he moved in with Respondent-Mother and the children. Respondent-Mother and Respondent-Stepfather were married on 10 May 2005. The trial court also found that "on one occasion [Respondent-Stepfather] used a belt or switch on [the] children resulting in excessive redness and bruising when *402 . . . Respondent Mother was not present[,] . . . [and] this was a use of excessive force[.]" The trial court further found that on another occasion, Respondent-Stepfather "became angry with [S.S.] due to [S.S.] pouting and took [S.S.] to the bedroom where [Respondent-Stepfather] punched [S.S.] in the arm." The trial court found that this action was inappropriate. The trial court concluded "the . . . children [were] neglected juveniles as defined by N.C.G.S. [§] 7B-101(15) in that they did not receive proper supervision and discipline by [Respondent-Stepfather] on at least two occasions." The trial court adjudicated the children neglected juveniles.
The trial court entered a disposition order on 11 January 2006 granting legal custody of the children to DSS and continuing physical custody of the children with Respondent-Father. The trial court also established a schedule for visitation for Respondent-Mother. However, the trial court ordered that Respondent-Stepfather not be present during Respondent-Mother's visitation with the children.
The trial court conducted a permanency planning hearing on 5 July 2006 and entered an order on 4 August 2006. The trial court made numerous findings of fact and conclusions of law and awarded Respondent-Father exclusive custody of the children, with scheduled visitation for Respondent-Mother. The trial court relieved DSS and the GAL of further involvement in the case and terminated juvenile court jurisdiction over the matter. The trial court also ordered that "[t]he order in this case is to be included in the 04 CVD 120 file as a regular civil order of this court, pursuant to [N.C. Gen.Stat. §] 7B-911." Respondent-Mother appeals.
Respondent-Mother argues the trial court erred by failing to comply with N.C. Gen. Stat. § 7B-911 when it terminated the juvenile court's jurisdiction and ordered the juvenile order to be included in the civil case file. N.C. Gen.Stat. § 7B-911(c) (2005) provides:
The court may enter a civil custody order under this section and terminate the court's jurisdiction in the juvenile proceeding only if:
(1) In the civil custody order the court makes findings and conclusions that support the entry of a custody order in an action under Chapter 50 of the General Statutes or, if the juvenile is already the subject of a custody order entered pursuant to Chapter 50, makes findings and conclusions that support modification of that order pursuant to G.S. 50-13.7; and
(2) In a separate order terminating the juvenile court's jurisdiction in the juvenile proceeding, the court finds:
a. That there is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding; and
b. That at least six months have passed since the court made a determination that the juvenile's placement with the person to whom the court is awarding custody is the permanent plan for the juvenile, though this finding is not required if the court is awarding custody to a parent or to a person with whom the child was living when the juvenile petition was filed.
Respondent-Mother first argues the trial court erred by failing to enter two separate and distinct orders, one terminating juvenile court jurisdiction, and one to be made part of the civil file. Respondent-Mother asserts that by requiring two distinct orders, the General Assembly intended to avoid making confidential juvenile proceedings part of the public record. However, DSS argues that the General Assembly simply intended to ensure that an order sufficient to justify termination of the juvenile court's jurisdiction be located in the juvenile file and an order sufficient to support modification of custody be filed in the civil file.
We agree with the contention of DSS and therefore hold that there is no requirement that the trial court enter two different orders. The trial court may enter one order for placement in both the juvenile file and the civil file as long as the order is sufficient to support termination of juvenile court jurisdiction and modification of custody.
Respondent-Mother next argues the trial court erred by failing to make findings *403 of fact and conclusions of law to support modification of custody. Respondent-Mother argues that the trial court's finding incorporating a previous adjudication order was insufficient to satisfy the trial court's obligations under N.C.G.S. § 7B-911(c)(1). N.C.G.S. § 7B-911(c)(1) requires that "if the juvenile is already the subject of a custody order entered pursuant to Chapter 50, [the court must] make[] findings and conclusions that support modification of that order pursuant to G.S. 50-13.7." N.C. Gen.Stat. § 50-13.7 (2005) provides:
Subject to the provisions of G.S. 50A-201, 50A-202, and 50A-204, an order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested.
"It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a `"substantial change of circumstances affecting the welfare of the child"' warrants a change in custody." Shipman v. Shipman, 357 N.C. 471, 473, 586 S.E.2d 250, 253 (2003) (quoting Pulliam v. Smith, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998) (quoting Blackley v. Blackley, 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974))). "While allegations concerning adversity are `acceptable factor[s]' for the trial court to consider and will support modification, `a showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody.'" Id. at 473-74, 586 S.E.2d at 253 (quoting Pulliam, 348 N.C. at 620, 501 S.E.2d at 900). Further, "if the trial court does indeed determine that a substantial change in circumstances affects the welfare of the child, it may only modify the existing custody order if it further concludes that a change in custody is in the child's best interests." Id. at 474, 586 S.E.2d at 253.
In the present case, the trial court attempted to incorporate the previous adjudication order by finding:
The actions of . . . Respondent Mother and . . . Respondent Stepfather, as set out in the adjudication order in this file 05 JA 104-105, would constitute a substantial change in circumstances so as to modify the order in the civil action and place custody of [the] children with . . . Respondent Father.
However, the trial court also made several findings which, independent of its finding incorporating the previous adjudication order, support modification of custody of the children. The trial court found:
1. [The] . . . children were adjudicated neglected by order of this Court . . . on December 12, 2005. The Court found that they were neglected based on Respondent Stepfather . . . administering inappropriate discipline on two occasions[.]
2. At the disposition hearing following adjudication, this Court placed the . . . children with . . . Respondent Father and ordered regular visitation between Respondent Mother and the . . . children. The Court also ordered the . . . children were not to be in the presence of . . . Respondent Stepfather. . . .
3. The . . . children have a lengthy history of behavioral problems at school and at home. Since living primarily with . . . Respondent Father, these discipline problems at school and at home have improved; however, there continues to be occasional behavioral issues from both the . . . children, especially from the oldest . . . child. . . .
6. The . . . children now attend counseling . . . for behavioral problems as well as other issues. The . . . children have benefitted from this counseling. It is scheduled to continue approximately one time per month. Respondent Father has born the brunt of expenses of such counseling.
We hold these findings of fact and the trial court's conclusion of law that "[t]his order is in the best interest of [the] . . . children" to be sufficient to support the modification of custody of the children pursuant to N.C.G.S. § 50-13.7.
Respondent-Mother also argues the trial court erred by failing to find, pursuant *404 to N.C.G.S. § 7B-911(c)(2)(a), that there was no need for continued State intervention on behalf of the children through a juvenile court proceeding. However, we hold that the trial court complied with N.C.G.S. § 7B-911(c)(2)(a) by making the following findings of fact:
2. . . . [R]egular visitation occurred, and at first the visits were facilitated by [DSS], but within a reasonable period of time, the parties began communicating sufficiently to arrange their visitation without [DSS's] help.
. . .
10. Respondent Mother and Respondent Father have been able to communicate sufficiently to coordinate visitations between the . . . children and . . . Respondent Mother without significant involvement from [DSS] since March 2006.
. . .
13. [DSS] wishes to be relieved of further involvement in this case.
. . .
15. The parties both have suitable homes for visitation and/or custody of [the] . . . children.
16. . . . Respondent Mother is capable of properly supervising and disciplining the . . . children and keeping them safe while in her care and custody.
The trial court also determined in its conclusions of law that "[DSS] and . . . GAL involvement is no longer necessary in this matter." We hold that the trial court complied with N.C.G.S. § 7B-911(c)(2)(a), and we overrule this assignment of error.
Respondent-Mother failed to set forth argument pertaining to her remaining assignments of error, and we therefore deem them abandoned. See N.C.R.App. P. 28(b)(6).
Affirmed.
Chief Judge MARTIN and Judge WYNN concur.