IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-235

Filed: 15 December 2020

Rowan County, Nos. 19 JA 12, 19 CVD 2599

IN THE MATTER OF D.C.

Appeal by Respondent-Father from orders entered 12 December 2019 by Judge James Randolph in Rowan County District Court. Heard in the Court of Appeals 17 November 2020.

> *Jane R. Thompson for petitioner-appellee Rowan County Department of Social Services.*
>
> *Rebecca J. Yoder for appellee Guardian ad Litem.*
>
> *Peter Wood for respondent-appellant Father.*

COLLINS, Judge.

Respondent-Father appeals from orders terminating jurisdiction in a juvenile proceeding and awarding custody of his minor child "Donna" to Mr. and Mrs. "Brown."[1] Respondent argues that the trial court erred by implicitly ceasing reunification efforts in its 24 October orders without making statutory findings under N.C. Gen. Stat. § 7B-906.2. We vacate the orders and remand for further proceedings consistent with this opinion.

---

[1] We use pseudonyms for the juvenile and the persons awarded custody throughout to protect the juvenile's identity. *See* N.C. R. App. P. 42(b). The minor child's mother is not a party to this appeal.

## I. Factual Background and Procedural History

Donna was born on 26 March 2018. The next day, Rowan County Department of Social Services ("RCDSS") received a report from the hospital nursing staff concerning Donna's welfare. Over the following 11 months, RCDSS attempted to assist the family with nutritional, parenting education, and mental health resources. During that time, RCDSS received additional reports concerning the adequacy of Donna's care, Donna's wellbeing, and the safety and stability of Respondent's household.

On 5 February 2019, RCDSS filed a juvenile petition alleging that Donna was neglected. The trial court granted RCDSS nonsecure custody; RCDSS placed Donna with Mrs. Brown, with whom Donna had been living since 15 August 2018. On 11 April 2019, Respondent and Mother (together, "the Parents") admitted that Donna was neglected as alleged in the juvenile petition.[2] In a consent order, the parties agreed that RCDSS would have custody of Donna and be responsible for her placement and care. The Parents also agreed to participate in mental health and substance abuse assessments and treatment, undergo drug screenings, and remain engaged in Donna's care.

Following the consent order, the trial court entered an "Adjudication/Disposition Order." In that order, the trial court made findings of fact,

---

[2] Respondent and Mother denied only the allegation that there was domestic violence between them.

adjudicated Donna neglected, and incorporated the terms of the consent order. The trial court continued custody of Donna with RCDSS, found that RCDSS had made reasonable efforts to achieve reunification, and directed that reunification efforts should continue. The trial court also noted that "[t]he initial permanent plan will be set at the first permanency planning review."

RCDSS subsequently moved for review of custody and permanency planning on 24 July 2019. After two continuances, the trial court held a hearing "to review [Donna's] custody, placement, and permanent plan" on 24 October 2019. At the hearing, RCDSS recommended that the Browns be granted custody of Donna.

Following the hearing, the trial court entered both a Juvenile Order and a Custody Order. The Juvenile Order, entered in the juvenile proceeding, terminated the trial court's jurisdiction in the matter. This order included the following pertinent findings of fact:

> 3. . . . [Donna] was placed with non-relative kinship providers, [the Browns]. [Donna] continues to thrive and flourish in the home of Mr. and Mrs. [Brown]. She is in a safe and appropriate home and is bonded with the [Browns] and their family. Mr. and Mrs. [Brown] are committed to providing permanent care for [Donna].
>
> 4. [The Parents] have not made adequate progress within a reasonable period of time under the plan, have not adequately participated or cooperated with the plan, or have not acted in a manner consistent with the health and safety of the juvenile.

5. The RCDSS recommends that custody of [Donna] be awarded to [the Browns]. Mr. and Mrs. [Brown] are ready and willing to provide permanence for [Donna]. The [Browns] understand the legal significance of having custody of [Donna] and have adequate resources to care appropriately for [Donna].

6. There is not a need for continued State intervention on behalf of the juvenile through this juvenile proceeding.

7. On this date, the court has entered an order pursuant to N.C.G.S. § 50-13.1, 50-13.2, 50-13.5, and 50-13.7, as provided in N.C.G.S. § 7B-911, considering that [Donna] has been safe and appropriate in [the Browns'] home for at least one year. The undersigned, RCDSS, and GAL are in agreement with the entry of both the civil custody order and this order terminating jurisdiction in the juvenile case.

The trial court then made the following conclusions of law:

1. The court has exclusive, continuing jurisdiction under N.C.G.S. § 50A-202 and has jurisdiction over the parties. Juvenile court jurisdiction will terminate with the entry of this order.

2. It is in the best interests of the juvenile, [Donna], for custody to be awarded to [the Browns], in a separate custody order.

3. Continuation of the court's jurisdiction in this matter is not necessary in order to protect the juvenile.

The Custody Order was entered in a new civil custody action, pursuant to N.C. Gen. Stat. § 7B-911. This order contained more extensive findings of fact concerning the fitness of the Parents and the quality of Donna's care. Based on these findings, the order awarded legal custody to the Browns.

The trial court signed both orders on 12 December 2019. Respondent gave written notice of appeal on 19 December.

## II. Discussion

On appeal, Respondent argues that the trial court erred by implicitly ceasing reunification efforts in its 24 October orders without making the required statutory findings under N.C. Gen. Stat. § 7B-906.2.[3]

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re M.T.-L.Y.*, 265 N.C. App. 454, 466, 829 S.E.2d 496, 505 (2019) (citation omitted). The failure to make statutorily-mandated findings constitutes reversible error. *In re J.L.H.*, 224 N.C. App. 52, 60, 741 S.E.2d 333, 338 (2012).

After an initial dispositional hearing in an abuse, neglect, or dependency proceeding, the trial court must conduct regular review hearings. *See* N.C. Gen. Stat. § 7B-906.1(a) (2019) (prescribing a review hearing within 90 days of the initial dispositional hearing and at least every six months thereafter). "Within 12 months of the date of the initial order removing custody, there shall be a review hearing

---

[3] The parties consider the Juvenile Order and the Custody Order together to assess whether the trial court made the findings required by section 7B-906.2. We therefore do not address whether the Juvenile Order, standing alone, must include the findings required by section 7B-906.2.

designated as a permanency planning hearing." *Id.* "At the conclusion of each permanency planning hearing, the court shall make specific findings as to the best permanent plans to achieve a safe, permanent home for the juvenile within a reasonable period of time." *Id.* § 7B-906.1(g) (2019).

"At any permanency planning hearing, the court shall adopt concurrent permanent plans and shall identify the primary plan and secondary plan." N.C. Gen. Stat. § 7B-906.2(b) (2019). "Reunification shall be a primary or secondary plan" except in three circumstances: (1) the court makes findings under N.C. Gen. Stat. § 7B-901(c) or § 7B-906.1(d)(3), (2) "the permanent plan is or has been achieved in accordance with [§ 7B-906.2(a1)]," or (3) "the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b).

To cease reunification efforts under section 7B-906.2(b) on grounds that such efforts "clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety," the trial court must assess the considerations set forth in section 7B-906.2(d). *In re S.B.*, 268 N.C. App. 78, 85, 834 S.E.2d 683, 689 (2019); *In re D.A.*, 258 N.C. App. 247, 253, 811 S.E.2d 729, 734 (2018). That section requires the court to

> make written findings as to each of the following, which shall demonstrate the degree of success or failure toward reunification:

(1) Whether the parent is making adequate progress within a reasonable period of time under the plan.

(2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.

(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.

(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C. Gen. Stat. § 7B-906.2(d) (2019).

We first address, as a threshold matter, whether the trial court ceased reunification efforts and omitted reunification from Donna's permanent plan. Respondent argues that the trial court implicitly ceased reunification efforts "by granting custody of Donna to the [Browns], not adopting a concurrent plan of reunification, and waiving all further review hearings." The Juvenile Order did not provide that reunification remained in Donna's permanent plan. The decretal portion of the Juvenile Order directed that the "Attorneys . . . , the GAL, and the RCDSS are hereby relieved of responsibility in this matter." By relieving RCDSS of its responsibilities, the trial court ceased reunification efforts. *See In re T.W.*, 250 N.C. App. 68, 73, 796 S.E.2d 792, 795-96 (2016) ("Only when reunification is eliminated from the permanent plan is the department of social services relieved from undertaking reasonable efforts to reunify the parent and child.").

Because the trial court ceased reunification efforts and omitted reunification from the permanent plan, it was required to satisfy section 7B-906.2(b). In this case,

the parties do not argue that the trial court made findings under N.C. Gen. Stat. § 7B-901(c) or § 7B-906.1(d)(3) such that reunification need not have been a primary or secondary plan.

RCDSS and the GAL argue that reunification need not have been a primary or secondary plan because the permanent plan had been achieved. RCDSS and the GAL contend that at the time the trial court entered the Juvenile Order, "RCDSS had been working with the parents on their reunification case plan for 19 months." In its own 11 April 2019 report to the trial court, however, RCDSS acknowledged that the permanent plan had not yet been established and recommended that the "initial" permanent plan be set at the first permanency planning hearing. The trial court's Adjudication/Disposition Order likewise found that "[t]he initial permanent plan will be set at the first permanency planning review." The first and only permanency planning hearing was not held until 24 October 2019.[4] While the Custody Order found that "the permanent plan for the juvenile was reunification with a parent" as of 10 April 2019, this finding was not supported by credible evidence, as no previous orders of the trial court had adopted a permanent plan. As such, RCDSS's contention that the permanent plan had been achieved at the time the trial court entered the Juvenile Order is without merit.

---

[4] The trial court's Juvenile Order described the 24 October hearing as one "to review and implement the permanent plan for the minor child," its Custody Order described the hearing as one "to review the custody, placement, and permanent plan of the minor child."

The trial court was thus required to find "that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety," N.C. Gen. Stat. § 7B-906.2(b), prior to ceasing reunification efforts and omitting reunification from the permanent plan. In its Juvenile Order, the trial court made the following pertinent findings of fact:

> [The Parents] have not made adequate progress within a reasonable period of time under the plan, have not adequately participated in or cooperated with the plan, or have not acted in a manner consistent with the health and safety of the juvenile.

These findings of fact are insufficient, in part because the trial court failed to address all of the considerations under section 7B-906.2(d). Specifically, the trial court made no findings concerning "[w]hether the parent[s] remain[ed] available to the court, the department, and the guardian ad litem for the juvenile." N.C. Gen. Stat. § 7B-906.2(d)(3). While the trial court found that the Parents "have not adequately participated in or cooperated with the plan," it did not address whether the Parents had cooperated with either RCDSS or the Guardian ad Litem as required by section 7B-906.2(d)(2). More fundamentally, the trial court omitted the crucial ultimate finding under section 7B-906.2(b) that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety."

A trial court's findings pursuant to section 7B-906.2(b) "need not recite the statutory language verbatim," and an order will be sufficient so long as it "make[s] clear that the trial court considered the evidence in light of" the relevant standard.

*In re L.M.T.*, 367 N.C. 165, 166, 167-68, 752 S.E.2d 453, 454-55 (2013) (examining the required statutory findings under the statutory provision antecedent to section 7B-906.2(b)). But here, the Juvenile Order does not address the ultimate question of whether reunification would be unsuccessful or inconsistent with Donna's safety. Nor does it contain any more detailed findings of fact pertinent to that question beyond the few listed above.

Like the Juvenile Order, the Custody Order contains the following findings of fact:

> Neither parent has made adequate progress within a reasonable period of time, has adequately participated in or cooperated with the plan, or has acted in a manner consistent with the health and safety of the juvenile.

Again, these findings of fact do not fully address the required considerations under section 7B-906.2(d).

The Custody Order does contain additional findings regarding domestic violence between the Parents, Respondent's completion of parenting and anger management programs, Respondent's failure to complete a Batterer's Intervention program, Mother's participation in counseling, and the Parents' inconsistent visitation with Donna. But even if construed liberally, these additional findings do not "make clear that the trial court considered the evidence in light of" the relevant standard. *In re L.M.T.*, 367 N.C. at 167-68, 752 S.E.2d at 454. Specifically, it is unclear that the trial court considered the degree to which the Parents "remain[ed]

available to the court, the department, and the guardian ad litem for the juvenile." N.C. Gen. Stat. § 7B-906.2(d)(3).

Moreover, the Custody Order suffers the same defect as the Juvenile Order— it fails to address the ultimate question of whether reunification would be unsuccessful or inconsistent with Donna's safety. Even if we were to construe the Custody Order's findings as satisfying section 7B-906.2(d), and those findings "support[ed] an ultimate finding under N.C. Gen. Stat. § 7B-906.2(b), it is not the role of the reviewing court to draw inferences or make ultimate findings on the trial court's behalf." *In re T.W.*, 250 N.C. App. at 76, 796 S.E.2d at 797; *see also In re D.A.*, 258 N.C. App. at 254, 811 S.E.2d at 734 (holding a trial court's order ceasing reunification efforts was insufficient where it "contain[ed] no findings that embrace the requisite ultimate finding that 'reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety'").

Because the trial court ceased reunification efforts without making sufficient findings pertinent to section 7B-906.2(d) and the ultimate finding required by section 7B-906.2(b), we vacate the trial court's orders and remand for further proceedings. *See Sherrick v. Sherrick*, 209 N.C. App. 166, 169-70, 704 S.E.2d 314, 317 (2011) (stating that an order properly entered under section 7B-911 is a jurisdictional prerequisite to transferring the proceeding to a Chapter 50 custody action).

## III. Conclusion

Because the trial court ceased reunification efforts and omitted reunification from Donna's permanent plan without making the requisite statutory findings, we vacate the Juvenile Order and Custody Order and remand for further proceedings consistent with this opinion. The trial court is to make the necessary statutory findings–supported by clear, cogent and convincing evidence–and conclusions to determine whether to cease reunification efforts.

VACATED AND REMANDED.

Judges DIETZ and ZACHARY concur.